IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAYS INNS WORLDWIDE, f/k/a DAYS  )
INNS OF AMERICA, INC.,           )
                                 )
              Plaintiff,         )
                                 )
vs.                              )    Case No. CIV-02-1679-M
                                 )
MANDIR, INC., JAYESH N. PATEL,   )
KAMLESH N. PATEL, DIPAK PATEL,   )
and RAMESH PATEL,                )
                                 )
              Defendants.        )

## **ORDER**

Pending before the Court is Plaintiff Days Inns Worldwide's ("DIW") Motion for Summary Judgment. The only remaining Defendant, Jayesh N. Patel, has not filed a response.[1] For the reasons set forth below, the Court finds that DIW's Motion should be granted in part and denied in part.

I.  Background

The following facts are undisputed. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (holding that in the case of a party who fails to respond to a motion for summary judgment, "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion"). DIW is one of the largest "guest lodging" franchisors in the United States. The company markets and sells the "Days Inn System" to franchisees who, in exchange for their investment, enjoy the benefits of DIW's centralized reservation system, its training services, and its advertising. Franchisees also benefit, of course, by their mere affiliation with DIW, a company that

---

[1] Defendants Kamlesh N. Patel, Dipak Patel, and Ramesh Patel were dismissed from this action by way of a Stipulation and Order of Dismissal With Prejudice issued on July 30, 2003. Defendant Mandir, Inc. ("Mandir") was dismissed from this action by order dated July 13, 2005.

has "invested substantial effort over a long period of time . . . to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Days Marks as distinctly designating DIW guest lodging services as originating with DIW." Pl.'s Mot. for Summ. J., Statement of Undisputed Material Facts, ¶ 9.

On June 4, 1993, DIW (as licensor/franchisor) and Mandir (as licensee/franchisee) entered into a fifteen-year license agreement (the "Agreement") for the operation of a 140-room[2] "guest lodging facility" in Elk City, Oklahoma. *See* Ex. A to Pl.'s Mot. for Summ. J. at 1. To induce DIW to enter into the Agreement with Mandir, Kamlesh Patel, Dipak Patel, Ramesh Patel, and Jayesh Patel executed a Guaranty, through which they agreed to assume all of Mandir's financial obligations in the event of default. *See* Ex. B to Pl.'s Mot. for Summ. J. On April 13, 2000, DIW executed an Amendment to License Agreement in which it recognizes that Jayesh Patel has assumed sole ownership of Mandir. *See* Ex. C to Pl.'s Mot. for Summ. J. Contemporaneously with the execution of the Amendment to License Agreement, Jayesh Patel, by himself, executed an amended Guaranty. The amended Guaranty is substantially similar in form to the original. *See* Ex. D to Pl.'s Mot. for Summ. J.

Several provisions of the Agreement are involved in the parties' dispute. Under Section 5, for example, Mandir agrees to comply with all DIW "System Standards," and to submit to up to four unannounced compliance inspections per year. Section 8 requires that Mandir pay DIW "recurring fees" on a monthly basis (such fees to include a royalty of 6.5% of gross room revenues, reservation system user fees, taxes, and interest). Under Section 9(b), Mandir is obligated to submit monthly reports to DIW (such reports to contain various financial information, average daily room rates, and

---

[2] In November of 1999, DIW and Mandir mutually agreed to reduce the room count to 100. *See* Pl.'s Mot. for Summ. J., Statement of Undisputed Material Facts, ¶ 12.

occupancy rates).  DIW is entitled, pursuant to Section 19, to terminate the Agreement for any number of enumerated reasons, including Mandir's failure to submit monthly reports, its failure to pay any amounts due under the Agreement, and its breach of any of the terms of the Agreement. Finally, Mandir is required under Section 20 to pay liquidated damages to DIW upon termination of the Agreement, provided that the termination is occasioned by Mandir's acts or omissions; the term "liquidated damages" is defined as "an amount equal to the sum of accrued Recurring Fees during the immediately preceding 24 full calendar months . . . [but not] less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility."  Ex. A to Pl.'s Mot. for Summ. J. at 17.

Also relevant to this dispute is the Guaranty.  In that document, Jayesh Patel "guarantee[s] that [Mandir's] obligations under the Agreement, including any amendments, will be punctually paid and performed."  Ex. D to Pl.'s Mot. for Summ. J.  Additionally, Jayesh Patel agrees that upon Mandir's default, he will "immediately make each payment and perform or cause [Mandir] to perform, each unpaid or unperformed obligation of [Mandir] under the Agreement."  *Id.*

The sequence of events that culminated in the filing of this action began in the summer of 2000.  On August 1 of that year, DIW advised Mandir by letter that Mandir was in default of the Agreement for failure to pay $6,542.60 in outstanding recurring fees and for failure to submit monthly reports.  Ex. E to Pl.'s Mot. for Summ. J.  Mandir was given ten days to cure the defaults, and was warned that if they were not cured the Agreement could be terminated.  *Id.*  Mandir did not cure the defaults.

Instead of terminating the Agreement, DIW conducted a "quality assurance" inspection on November 6, 2000.  In a letter dated November 9, 2000, DIW advised Mandir that its facility received a failing score, and that Mandir was therefore in default of the Agreement.  Ex. F to Pl.'s

3

Mot. for Summ. J. DIW told Mandir that to cure the default it must achieve a passing score on the next quality assurance inspection, which DIW predicted would occur in approximately thirty days. Mandir was again warned that if the default was not cured the Agreement could be terminated. *Id.*

DIW waited until March 7, 2001 to conduct the second quality assurance inspection. In a letter dated March 15, 2001, DIW advised Mandir that the facility received a second failing score, and that Mandir was therefore in continuing default of its obligations under the Agreement. Ex. G to Pl.'s Mot. for Summ. J. Mandir was warned, for the third time, that the Agreement was subject to termination. *Id.*

In a letter dated May 11, 2001, DIW advised Mandir, for a second time, that Mandir was in default of the Agreement for failure to submit monthly reports and for failure to pay outstanding recurring fees, which by that time had grown to $32,616.95. Ex. H to Pl.'s Mot. for Summ. J. Mandir was directed to contact DIW as soon as possible regarding its intentions, and was informed that if the defaults were not cured the Agreement was subject to termination without further notice. *Id.*

DIW conducted a third quality assurance inspection on June 14, 2001. It advised Mandir, by letter dated June 25, 2001, that the facility received yet another failing score, that Mandir was therefore in default of the Agreement, and that the Agreement was subject to immediate termination. Ex. I to Pl.'s Mot. for Summ. J.

In a letter dated August 15, 2001, DIW informed Mandir that the Agreement was terminated effective that same date. Ex. J to Pl.'s Mot. for Summ. J. Mandir was directed to immediately refrain from using all DIW service marks, trade names, and other intellectual property, to pay DIW liquidated damages in the amount of $200,000.00, and to pay DIW all past-due recurring fees. *Id.* DIW requested payment for all sums within thirty days from the date of the letter. *Id.*

Mandir neglected to make any payments or to refrain from using DIW's intellectual property, prompting DIW to mail three additional demand letters to Mandir on September 4, 2001, Ex. L to Pl.'s Mot. for Summ. J., October 15, 2001, Ex. M to Pl.'s Mot. for Summ. J., and January 25, 2002, Ex. N to Pl.'s Mot. for Summ. J. Each of these letters essentially reiterates the demands of the first. All went unheeded.

Based on the foregoing, DIW instituted this action against all Defendants alleging breach of contract, unjust enrichment, and violations of the Lanham Act. As stated above, however, Mandir, Kamlesh Patel, Dipak Patel, and Ramesh Patel have been dismissed. Because Jayesh Patel is the only remaining Defendant, the Court need only consider DIW's claims for breach of contract and unjust enrichment.[3] Through these claims, DIW seeks to recover past-due recurring fees in the amount of $55,208.29, plus prejudgment interest at the contract rate of 1.5% per month, beginning July 31, 2003 until the date of final judgment, and liquidated damages in the amount of $200,000.00, plus prejudgment interest at the contract rate of 1.5% per month, beginning September 15, 2001 until the date of final judgment. DIW also seeks postjudgment interest, attorneys' fees, and costs.

II.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." The summary judgment standard contemplates two distinct burdens of proof. *See Reed*, 312 F.3d at 1194; *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). First, "the moving party must meet its 'initial responsibility' of

---

[3] The Court finds that DIW's Lanham Act claims do not implicate Jayesh Patel, whose potential liability to DIW derives exclusively from the amended Guaranty. Clearly, Jayesh Patel's potential liability is tied to Mandir's contractual obligations under the Agreement; it is not coextensive with that of Mandir with respect to alleged statutory violations.

demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed*, 312 F.3d at 1194. If the moving party fails to produce sufficient evidentiary support to satisfy this "initial responsibility," summary judgment is inappropriate "*even if no opposing evidentiary matter is presented.*" *Id.* (citations omitted) (emphasis in original). If, on the other hand, the moving party satisfies its "initial responsibility," the non-moving party "'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof.'" *Simms*, 165 F.3d at 1326 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

By failing to respond,

> the non-moving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed*, 312 F.3d at 1195.

The determination as to whether facts are material must be made by reference to the substantive law applicable to the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In application of the foregoing standard, the court examines "the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998).

III.   Discussion

    A.   Breach of Contract Claim

DIW contends Mandir breached the Agreement by, *inter alia*, failing to comply with DIW's quality assurance standards, failing to timely submit monthly reports, failing to timely make recurring fee payments, and failing to pay liquidated damages upon termination of the Agreement. In relief, DIW requests liquidated damages, past-due recurring fees, and prejudgment and postjudgment interest on both.

    1.   Choice of Law

Before addressing the merits of DIW's state-law breach of contract claim, the Court must determine *which* state's law governs. It is well settled that a federal court sitting in diversity "looks to the substantive law of the forum state, including its choice of law principles, to determine the applicable substantive law." *Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). To determine the applicable substantive law in the instant action, this Court must of course look to Oklahoma choice of law principles.

Under Oklahoma law, "a contract will be governed by the laws of the state where the contract was entered into *unless otherwise agreed* and unless contrary to the law or public policy of the state where enforcement of the contract is sought." *Williams v. Shearson Lehman Bros.*, 917 P.2d 998, 1002 (Okla. Ct. App. 1995) (emphasis added). The contract at issue in this case was executed in Oklahoma, but provides (in Section 27) that "[t]his Agreement will be construed in accordance with the laws of the State of New York . . . ." Ex. A to Pl.'s Mot. for Summ. J. at 21. The Court finds nothing about the Agreement's choice of law provision that may arguably be considered contrary to the law or public policy of the State of Oklahoma. The Court finds, therefore,

that the provision should be given effect and that New York law governs DIW's breach of contract claim.

### 2. Contractual Interpretation

"Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *British Int'l Ins. Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)). "Where . . . the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *Id.* (quoting *Rainbow v. Swisher*, 527 N.E.2d 258, 259 (N.Y. 1988)). The determination as to whether an ambiguity exists is a question of law for the court. *Id.* (citing *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).

After carefully reviewing the relevant provisions of the Agreement, the Court is convinced that the parties' intentions are clearly and unambiguously expressed in the contractual language. Thus, the Court finds that Mandir agreed, *inter alia*, to comply with DIW's "System Standards" under Section 5 of the Agreement, to pay recurring fees to DIW pursuant to Section 8 of the Agreement, to submit monthly reports to DIW pursuant to Section 9(b) of the Agreement, and to pay liquidated damages to DIW in the event the Agreement terminated by action of Mandir pursuant to Section 20 of the Agreement.

### 3. Breach

"The essential elements of an action for breach of contract under New York law are (1) formation of a contract between the parties, (2) plaintiff's performance, (3) defendant's failure to perform, and (4) resulting damages to plaintiff." *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 472 (S.D.N.Y. 2005). In the instant action, the evidence and undisputed factual allegations before the

Court establish that DIW and Mandir entered into a contract (the Agreement) on June 4, 1993, and amended the contract on April 13, 2000. The evidence and undisputed factual allegations further establish that DIW performed its obligations under the Agreement, providing Mandir access to DIW's centralized reservation system, training services, and advertising, and permitting Mandir to affiliate itself with DIW. The evidence and undisputed factual allegations establish that Mandir failed to perform all of its obligations under the Agreement to the extent that it failed three quality assurance inspections, failed to timely submit monthly reports to DIW, failed to timely pay all recurring fees owed to DIW, and failed to pay liquidated damages to DIW upon termination of the Agreement. Finally, the evidence and undisputed factual allegations establish that DIW was financially injured as a result of Mandir's failure to perform under the Agreement: at the very least, DIW has not been paid the recurring fees or liquidated damages to which it is entitled under the Agreement. Based upon the aforementioned evidence and undisputed factual allegations, as well as the clear and unambiguous language of the Agreement, the Court finds that DIW has satisfied its "initial responsibility" of demonstrating that there exists no genuine issue of material fact with respect to Mandir's breach of the Agreement, and that DIW is therefore entitled to summary judgment on its breach of contract claim as a matter of law.

    4.    <u>Liquidated Damages</u>

Having determined that DIW is entitled to summary judgment on its breach of contract claim, the Court turns to the issue of damages, and begins with DIW's request for liquidated damages. The enforceability of a liquidated damages provision presents a question of law for the court. *X.L.O. Concrete Corp. v. John T. Brady and Co.*, 482 N.Y.S.2d 476, 479 (N.Y. App. Div. 1984), *aff'd*, 489 N.E.2d 768 (N.Y. 1985). The general rule is that liquidated damages provisions will be deemed valid and enforceable unless they are unconscionable or contrary to public policy.

*Id.* at 478. In the absence of statutory authority that provides otherwise, penalties are *per se* contrary to public policy under New York law. *Id.* A liquidated damages provision will be considered a penalty, and therefore unenforceable, if the amount provided for in the provision is "manifestly disproportionate" to the amount of actual damages suffered. *Id.*

> Thus, the rule has evolved that when the damages flowing from the breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the injury, the stipulated sum will be treated as a penalty . . ., but, where they are uncertain, or difficult, if not incapable, of ascertainment, then a provision liquidating them in advance of loss will be enforced, if the amount liquidated bears a reasonable proportion to the probable loss.

*Id.* at 478-79 (citation omitted). Finally, the determination as to whether a liquidated damages provision is enforceable must be based on the parties' expectations as of the date the contract was executed, not the date of the breach. *Id.* at 479.

The Agreement sets forth two methods for calculating liquidated damages. The first method involves adding all recurring fees incurred during the immediately preceding twenty-four months. The second method involves multiplying the total number of guest rooms in the facility by $2,000.00. The Agreement provides that liquidated damages shall not be less than the amount arrived at through the second method. Therefore, the first method applies only if it would produce a liquidated damages amount that exceeds the amount arrived at through the second method.

The second method applies here because the amount of liquidated damages available under the second method exceeds the amount available under the first method. Under the first method, the amount of liquidated damages would be $66,162.72. Aff. of James D. Darby, Ex. 1 to Pl.'s Mot. for Summ. J. at ¶ 35. Under the second method, the amount of liquidated damages would be $200,000.00, which is the product of 100 (guest rooms) multiplied by $2,000.00. *Id.*

Having determined that the Agreement allows for $200,000.00 in liquidated damages, the Court must now undertake a two-part inquiry. *See Brecher v. Laikin*, 430 F. Supp. 103, 106 (S.D.N.Y. 1977). First, the Court must decide, as of the date the Agreement was executed, whether the actual damages that would have arisen from a breach were "incapable of, or very difficult of, accurate estimation." *Id.* Second, the Court must determine whether the amount of liquidated damages available under the Agreement is unreasonably disproportionate to the amount of damages "reasonably anticipated for the breach as of the time the contract was made." *Id.*

Regarding the first factor, the Court finds that the actual damages that would have arisen from a breach were difficult or incapable of accurate estimation at the time the Agreement was executed. As indicated above, the recurring fees that Mandir owed to DIW included a 6.5% royalty on gross room revenues. The amount of recurring fees that Mandir owed in any given month therefore depended upon, among other things, national and local market conditions, the entry or withdrawal of competitors from the market, vacationers' travel patterns, and the condition of the facility. *See* Aff. of James D. Darby, Ex. 1 to Pl.'s Mot. for Summ. J. at ¶ 34. These variables, and the impact that the variables may have on occupancy rates and, hence, recurring fees, are inherently unpredictable. As a consequence, the Court finds that DIW and Mandir were, at the time the Agreement was executed, incapable of accurately estimating the amount of damages that would have resulted from a future breach. *See Shree Ganesh, Inc. v. Days Inns Worldwide, Inc.*, 192 F. Supp. 2d 774, 786 (N.D. Ohio 2002) (considering a liquidated damages provision essentially identical to the provision at issue in this case and finding that actual damages "are not easily assessable, particularly in light of the many variables that must be considered in the hotel industry"); *Days Inns of Am., Inc. v. P & N Enters.*, 164 F. Supp. 2d 255, 262-63 (D. Conn. 2001) (same); *Days Inn of Am., Inc. v. Patel*, 88 F. Supp. 2d 928, 935 (C.D. Ill. 2000) (same).

The Court next considers whether the liquidated damages amount provided for in the Agreement is unreasonably disproportionate to the amount of damages that could have been reasonably anticipated when the Agreement was executed. At first glance, the applicable liquidated damages amount ($200,000.000) may appear excessive simply because it is three times higher than the amount arrived at through the Agreement's alternative method for calculating liquidated damages. Initial appearances, however, can be deceiving. It must be emphasized that the amount of recurring fees that would have been owing in the absence of a breach could have been significantly higher (or lower) than $200,000.00 depending upon the combined impact of the various unpredictable variables discussed above. Thus, $66,172.72, the amount produced by the Agreement's first method for calculating liquidated damages, cannot be considered a reasonable estimation of future recurring fees at the time the Agreement was executed. It must also be remembered that liquidated damages are intended to compensate the non-breaching party for all of its losses upon the occurrence of a breach. Here, DIW's losses extend well beyond a twenty-four-month period, as the Agreement was intended to run through June 3, 2008, nearly seven years after the Agreement was terminated. *See* Ex. A to Pl.'s Mot. for Summ. J. at Preamble and § 6.

Having carefully considered the evidence presented by DIW, the Court concludes that the $200,000.00 minimum liquidated damages amount provided for in the Agreement is not unreasonably disproportionate to the amount of damages reasonably anticipated by DIW and Mandir at the time the Agreement was executed to result from early termination of the Agreement. In support of this conclusion, the Court notes that several unpredictable factors significantly impact the amount of recurring fees owed to DIW throughout the life of the Agreement, and that the convergence of these factors could have easily resulted in a recurring fees figure that far exceeded $200,000.00 over the course of the months and years that the Agreement would have remained in

effect absent early termination. Given the uncertainties with respect to the monthly recurring fee amount and the parties' inability to forecast when the Agreement would terminate, the Court concludes that the Agreement's minimum estimate of DIW's anticipatory damages is reasonable, and that the liquidated damages provision should be enforced. *See P & N Enters.*, 164 F. Supp. 2d at 262 (concluding that amount of liquidated damages provided for in liquidated damages provision essentially identical to the provision at issue in this case is a "reasonable estimate of just compensation"); *Patel*, 88 F. Supp. 2d at 935-36 (same). *But see Shree Ganesh*, 192 F. Supp. 2d at 786-87 (holding unenforceable liquidated damages provision essentially identical to the provision at issue in this case because "the amount of damages as calculated based on the number of rooms is approximately five times the amount that would have resulted if the calculation were based on Recurring Fees").

### 5. Recurring Fees

In addition to liquidated damages, the Court finds that DIW is also entitled to recover its past-due recurring fees. Liquidated damages are "prospective" in nature. *John T. Brady & Co. v. Form-Eze Sys., Inc.*, 623 F.2d 261, 263 (2d Cir. 1980) (interpreting New York law). In other words, liquidated damages only compensate the non-breaching party for those damages arising *after* the breach occurred. Here, the liquidated damages award will compensate DIW for the nearly seven years of recurring fees that Mandir would have been required to pay under the fifteen-year term of the Agreement. DIW's entitlement to prospective liquidated damages, however, does not preclude its entitlement to *compensatory* damages for Mandir's past-due recurring fee payments.

The Court finds that DIW is entitled to a recurring fee award of $47,910.75. The Court arrives at this figure by starting with the total amount of unpaid recurring fees requested by DIW ($55,208.29) and deducting all finance charges (which the Court interprets to be interest charges)

included in that figure after September 15, 2001, the date by which Mandir was required to make all payments due to DIW following termination of the Agreement. *See* Ex. K to Pl.'s Mot. for Summ. J. As explained below, the Court finds that DIW is entitled to prejudgment interest as of September 15, 2001, but only at the interest rate set forth in the applicable New York statute.

### 6. Prejudgment Interest

DIW seeks prejudgment interest on its past-due recurring fees award at the rate of 1.5% per month, beginning July 31, 2003 until the date of final judgment, and prejudgment interest on its liquidated damages award at the same rate of 1.5% per month, beginning September 15, 2001 until the date of final judgment. "Since federal jurisdiction in this case is premised on diversity and the right to interest on a cause of action qualifies as a substantive right, [this Court] must look to New York law [to determine whether and to what extent DIW is entitled to prejudgment interest]." *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir. 1984).

"Under New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" *Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) (quoting *Adams*, 730 F.2d at 93); *see* N.Y. C.P.L.R. § 5001 (McKinney 1992). However, in such cases, prejudgment interest must be calculated at New York's statutory interest rate of 9% per annum. N.Y. C.P.L.R. § 5004 (McKinney 1992); *see Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). Regarding the date from which interest is computed, New York law provides that

> [i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b) (McKinney 1992).

In this case, DIW requests prejudgment interest on its award of unpaid recurring fees beginning July 31, 2003, the day before it filed its Motion for Summary Judgment. The Court finds that "the earliest possible date the cause of action existed" in this case is September 15, 2001, which is the date by which Mandir was required to pay all amounts due to DIW following termination of the Agreement. The Court further finds, therefore, that DIW is entitled to prejudgment interest on its award of unpaid recurring fees at New York's statutory interest rate of 9% per annum since that date, but excluding the period of the bankruptcy stay.[4] *See Bursch v. Beardsley & Piper*, 971 F.2d 108, 113 (8th Cir. 1992) (affirming district court order denying request for prejudgment interest during period of bankruptcy stay). Thus, the Court finds that DIW is entitled to $11,929.49 in prejudgment interest on its award of unpaid recurring fees, which results in a total unpaid recurring fees award of $59,840.24.

DIW requests prejudgment interest on its award of liquidated damages beginning September 15, 2001. As the Court has already determined that September 15, 2001 represents "the earliest possible date the cause of action existed," the Court finds that DIW is entitled to prejudgment interest on its liquidated damages award at New York's statutory interest rate of 9% per annum since that date, again excluding the period of the bankruptcy stay. Therefore, the Court finds that DIW is entitled to $49,798.81 in prejudgment interest on its award of liquidated damages, which results in a total liquidated damages award of $249,798.81.

---

[4] Mandir filed its Voluntary Petition under Chapter 11 on December 2, 2003. The bankruptcy litigation concluded on March 3, 2005. Hence, the Court excludes from its calculation of prejudgment interest a total of fifteen months. The Court's prejudgment interest calculation, therefore, is based on a total accrual period of thirty-one months.

7. <u>Postjudgment Interest</u>

Under 28 U.S.C. § 1961(a), DIW is entitled to postjudgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). Here, the relevant interest rate is 3.59% per diem from the date of judgment.

8. <u>Guaranty</u>

While it is clear that DIW is entitled to judgment as a matter of law on its breach of contract claim, the Court has yet to determine who is liable. It is indisputable that Mandir, as licensee/franchisee, is primarily liable for all damages arising from its breach of the Agreement. Also at issue in this case, however, is Jayesh Patel's Guaranty.

Under New York law, "[t]he construction of a contract of guaranty is governed by the same rules as any other contract." *Leyenson v. Lindenbaum*, 158 N.Y.S. 355, 356 (N.Y. App. Term 1916). Thus, the Guaranty should be "interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *British Int'l Ins. Co.*, 342 F.3d at 82 (quoting *Cruden*, 957 F.2d at 976). The liability of the guarantor is "measured by that of the principal," *Cross v. Rosenbaum*, 161 N.Y.S.2d 337, 338-39 (N.Y. Special Term 1957), and is "to be narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract . . . ." *Key Bank of Long Island v. Burns*, 556 N.Y.S.2d 829, 830 (N.Y. App. Div. 1990) (citation omitted).

Here, Jayesh Patel signed a Guaranty providing that upon Mandir's default, he will "immediately make each payment and perform or cause [Mandir] to perform, each unpaid or unperformed obligation of [Mandir] under the Agreement." Ex. D to Pl.'s Mot. for Summ. J. The Court finds that this language is clear and unequivocal, and that it obligates Jayesh Patel to discharge

any unsatisfied financial obligation that arises under the Agreement. The liquidated damages and past-due recurring fees awards to which DIW is entitled constitute unsatisfied financial obligations arising under the Agreement. As a result, Jayesh Patel is liable for those damages under the Guaranty to the same extent that Mandir is liable for them under the Agreement. Accordingly, the Court finds that DIW is entitled to summary judgment against Jayesh Patel on its breach of contract claim in the amount of $309,639.05, plus postjudgment interest at the rate of 3.59% per diem from the date of judgment.

B.   Unjust Enrichment

In light of the Court's ruling on DIW's breach of contract claim, the Court need not reach DIW's alternative claim for unjust enrichment. The Court finds that DIW has obtained complete relief with respect to all amounts sought through this claim, and is entitled to nothing more. *See Adams*, 730 F.2d at 94 (rejecting argument that district court erred in failing to instruct jury on quantum meruit claim where the plaintiff obtained complete relief on his breach of contract claim).

C.   Attorneys' Fees and Costs

DIW requests attorneys' fees based solely on its Lanham Act claims. As those claims are no longer at issue, and indeed were never at issue as against Jayesh Patel, the Court finds that DIW's attorneys' fee request should be denied. *See* 10 Charles Alan Wright *et al.*, Federal Practice and Procedure § 2675, at 314 (3d ed. 1998) ("In the United States, contrary to the practice in England, it has been the custom to require litigants to assume the burden of paying for their own litigation connected legal services in the absence of a rule or statute to the contrary."). Finally, the Court declines to rule on DIW's request for costs, as such a request must be pursued through the Court Clerk's Office in accordance with LCvR54.1.

17

IV.     Conclusion

For all of the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART DIW's Motion for Summary Judgment [docket no. 33] as follows:

(1)     The Court enters summary judgment in favor of DIW and against Jayesh Patel on DIW's breach of contract claim; in relief, the Court awards DIW $59,840.24 in unpaid recurring fees and $249,798.81 in liquidated damages, for a total damages award of $309,639.05, plus postjudgment interest, which shall accrue at the rate of 3.59% per diem from the date of judgment;

(2)     The Court declines to enter summary judgment in favor of DIW on its unjust enrichment claim;

(3)     The Court declines to enter summary judgment in favor of DIW on its Lanham Act claims;

(4)     The Court denies DIW's request for attorneys' fees; and

(5)     The Court declines to award DIW's requested costs at this time pursuant to LCvR54.1.

Finally, the Court DENIES DIW's Motion to Compel [docket no. 28] as moot. This order effectively terminates this action.

**IT IS SO ORDERED this 18th day of July, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE